THE BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF RUSSELL v. EDWARD J. MAHONEY.

No. 13,730. (77 Pac. 692.)

SYLLABUS BY THE COURT.

TAXATION— *School-lands—Result of Forfeiture of Contract of Purchaser.* Where school-lands are purchased from the state on deferred payments they become taxable and may be sold for unpaid taxes, but the one who buys such lands at a tax sale takes only the interest of the original purchaser, subject to a possible forfeiture for a non-payment of the balance due or the interest on the same, and if a forfeiture occur it effectually terminates the interest of the original purchaser and those holding under him, including the tax-certificate holder, and the full title to the lands then reverts to the state, free from any lien or claim for taxes.

Error from Russell district court; J. H. REEDER, judge. Opinion filed July 7, 1904. Affirmed.

*J. C. Ruppenthal,* for plaintiff in error.

*W. G. Eastland,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : The board of county commissioners of Russell county directed the county attorney to institute proceedings under section 7718 of the General Statutes of 1901 to have delinquent taxes on lands which were bid in by the county declared liens thereon, and the lands sold in satisfaction thereof. Included in the list of lands so in default were several tracts of school-land which had been sold by the state on deferred payments. After the sale of the school-lands, and while they were held under contracts of purchase, taxes were levied against them which were not paid, and at tax sales the county bid in the tracts in question. After these tax proceedings the purchasers of the school-lands defaulted in the payment of the an-

nual interest and the balance of the purchase-price of the lands, and in accordance with statutory directions forfeitures of the rights of purchasers were declared. Later, the lands were reappraised and sold substantially as if there had been no previous sale. In this proceeding the second purchasers are resisting the enforcement of the collection of the delinquent taxes which were levied before the forfeiture of the first contracts of purchase. The trial court in effect held that the tax liens fell with the forfeitures, and that the purchasers at the second sale took the lands free from any encumbrance by reason of the preceding purchase or the taxes previously levied against them.

The question was rightly decided. The purchaser of school-lands on deferred payments acquires an interest in the lands which is subject to forfeiture for non-payment of interest or purchase-money when the same becomes due. When such a sale is made the property is subject to taxation, but the rights and liens of those who may purchase such lands at a tax sale are exceptional and conditional. The statute provides that when the taxes levied on school-lands are not paid and the same are sold for taxes the purchaser at a tax sale is subject to the conditions of the contract between the state and the school-land purchaser, one of which is that there may be a forfeiture to the state. (Gen. Stat. 1901, § 6354.) In *Prescott v. Beebe*, 17 Kan. 320, it was said that the holder of a tax title "simply takes the interest of the purchaser," and the statute itself is a warning to such purchaser that his interest is contingent and may be lost by the default of one who purchased from the state. It tells him that his interest is subject to compliance with a contract involving forfeiture, and the provision which gives him sixty days' notice of a proposed forfeiture warns him

that if the amount due to the state be not paid within the sixty days the interest of all persons under the sale by the state will be absolutely forfeited.   (Gen. Stat. 1901, § 6356.)

The right acquired by a purchaser at tax sale is contingent and somewhat insecure, but the legislature has provided a measure of protection by permitting him to make the payments due under the contract with the state and substituting him to the rights of the original purchaser.   (Gen. Stat. 1901, §§ 6356, 7642; *Larabee v. Prather*, 51 Kan. 743, 33 Pac. 608.) When a forfeiture occurs, however, the rights and interests of every one under a purchase from the state, including the tax-sale purchaser, are absolutely forfeited.   This was in effect the decision in *Larabee v. Prather*, supra, where it was said :

"The 60-day notice which is required by that section to be served is for the purpose of cutting off the rights of both original and tax-sale purchasers, in case the instalments due the school fund are not paid. The section provides not only for service on the original purchaser, but also contains this provision : 'And in case such land or any part thereof has been sold for taxes, a copy of such notice shall be delivered to such purchaser at tax sale, if a resident of the county.' If the instalments in default are not paid within 60 days after the service of the notice, the rights of the tax-certificate holder, as well as of the original purchaser, are terminated, and the state then resumes its full title freed from all claim."

(See, also, *Flint v. Comm'rs of Jackson Co.*, 43 Kan. 656, 23 Pac. 1048; *Menger v. Comm'rs of Douglas Co.*, 48 id. 553, 29 Pac. 588.)

The forfeitures in question appear to have been valid, and the effect was absolutely to terminate and cut off the interests of all tax-holders, including Russell county.   The lands then passed to the state cleared of

every lien or claim, and could then be reappraised and sold as they were in the first instance.   The county whose officers gave the notice and conducted the forfeitures could not complain of a want of notice, and since the forfeitures were effective it was immaterial to the county that the state may have subsequently sold the same lands to a former purchaser who had made default.   Even if such a sale were treated as an irregularity, it would not invalidate the forfeiture nor restore the rights of tax-title holders.

The judgment of the district court will be affirmed.

All the Justices concurring.